**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** **v.** **DEANGELO PALMER** | **Case No. 1:26-cr-00037-RBW** |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO SUPPRESS TANGIBLE EVIDENCE

Mr. Deangelo Palmer, through undersigned counsel, again respectfully requests that this Honorable Court suppress the use as evidence at trial of all tangible objects seized from the vehicle he was driving on February 18, 2026[1], because his seizure that day was illegal and the search of his car was in violation of his rights under the Fourth and Fifth Amendments to the United States Constitution. Mr. Palmer requests an evidentiary hearing on this motion. Counsel states the following upon information and belief.

## Procedural History

On February 18, 2026, at around 10:00 pm, MPD officers Othterson, Onoja, Sholoye, Thrift, and Kelly of the Fifth District Crime Suppression Team were patrolling in the area of 21st Street Northeast while assigned to the Making DC Safe and Beautiful Task Force. While on patrol, officers claim to have noticed Mr. Palmer's car stopped in the south alley of the 2000 block of Benning Road Northeast

---

[1] Unless stated otherwise, all times referenced herein are references to events alleged to have taken place on February 18, 2026.

1

with his headlights on. The officers then claim to have noticed Mr. Palmer drive past them in the "T" intersection of the alley way without wearing his seatbelt.

On March 19, 2026, this Court ordered that Mr. Palmer file his Motion to Suppress Evidence by March 30, 2026, that the government file its Response to Defendant's Motion to Suppress by April 20, 2026, and that Mr. Palmer file his Reply to the government's Response by April 27, 2026. was to be filed in advance of the scheduled hearing on that issue.

In his opening brief, on his Motion to Suppress Evidence, Mr. Palmer through counsel argued that the officers did not see him commit a seatbelt violation on February 18, 2026, prior to him being stopped and yet decided to conduct a traffic stop on his vehicle that evening. Mr. Palmer further argued that he was illegally seized because officers extended the traffic stop longer than necessary to complete the investigation of the alleged traffic violation that precipitated the stop. Finally, Mr. Palmer argued that the evidence must be suppressed because officers searched Mr. Palmer's vehicle without the requisite probable cause for doing so.

In its Response to Mr. Palmer's Motion to Suppress Tangible Evidence, the government maintained that (1) Officers observed Mr. Palmer while he was operating his car and wearing his seatbelt improperly, (2) that Officers diligently conducted their investigation during a four minute and fifty-four second stop, (3) that officers only stepped Mr. Palmer out of his car for their own safety – while they gave a final explanation for the stop, and that (4) officers did not violate the Plain

2

View Doctrine by trespassing into the vehicle and looking into the driver's compartment of the vehicle.

I.   **Mr. Palmer Was Illegally Seized Because Officers Extended the Traffic Stop Longer Than Necessary to Complete the Investigation of the Alleged Traffic Violation That Precipitated the Traffic Stop.**

To be sure, Mr. Palmer's position is that officers did not observe him commit a seatbelt violation before they stopped him on February 18, 2026. But even if officers had witnessed a seatbelt violation and conducted a traffic stop that started off legal, the traffic stop became illegal when it exceeded "the time needed to handle the matter for which the stop was made." *Rodriguez v. United States*, 575 U.S. 348, 351 - 352. At that point the stop violate[ed] the constitutions shield against unreasonable seizures." *Id.* A seizure that is justified solely by a police-observed traffic violation, converts to an unlawful one "if it is prolonged beyond the time reasonably required to complete the mission" of issuing a traffic ticket for the alleged violation. *Id.*

The government concedes that, "[g]enerally police may not prolong a traffic stop outside of the time necessary to investigate the reasons for the traffic stop. [ECF 17 at p. 10]. Explaining that officers wanted to communicate the basis for the stop – outside of the car after having learned that he was on probation for armed robbery, as a justification for demanding that Mr. Palmer step out of his car that night – the government also acknowledges that officers asked Mr. Palmer to step out of his vehicle after they had already finished checking his license and registration – and therefore after the mission of the stop had been completed. [ECF 17 at p. 11-12].

3

Citing Rodriguez, the government argues that "[t]he officers were permitted to conduct non-traffic inquiries during the traffic stop, and nothing they did prolonged the stop." [ECF 17 at p. 10]. This assertion goes to the heart of the issue that the Court must decide. And while it is true that officers are permitted to conduct non-traffic inquiries during a traffic stop, in this instance, officers prolonged the stop of Mr. Palmer – something that they were not allowed to do. Citing *Darwah*, the government argues that [o]nce Officer Onoja received the Defendant's license at 22:15:39 hours, he diligently pursued his traffic-related tasks." [ECF 17 at p. 10]. While diligence is mandatory, it can be hard to objectively measure diligence in the context of a traffic stop investigation, and hard to determine whether an officer conducted an investigation without unnecessary delay or investigative detour. However, "[t]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' – to address the traffic violation that warranted the stop and attend to the related safety concerns." *Rodriguez* at 354. A traffic stop is legally over "when tasks tied to the traffic infraction are – or reasonably should have been – completed." *Id.* Those tasks include "determining whether to issue a traffic ticket" and "ordinary inquiries incident to [the traffic] stop," like checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobiles registration and proof of insurance." *Id.* at 355.

Importantly for our purposes, all of the traffic-stop related tasks related to Mr. Palmer on February 18, 2026, had been completed prior to Officer Onojo asking Mr.

4

Palmer to step out of his vehicle that evening. Below, Officer Onojo can be seen returning to the driver's side of Mr. Palmer's car – Mr. Palmer's license and registration in hand, before asking him to step out of and to the rear of his car.



After requiring that Mr. Palmer get out of his car and follow him to the rear of it, Officer Onojo next tells Mr. Palmer that his license and registration documents were ok. Officers on the scene had completed all tasks related to the traffic stop before Mr. Palmer was stepped out of his vehicle. By that point officers had seemingly conducted a thorough investigation of the alleged traffic violation. They checked his driver's license, determined that there where no outstanding warrants against him, they inspected the automobile's registration and proof of insurance, and determined that they would not issue him a ticket for the alleged seatbelt violation (no ticket was issued for a seatbelt violation). Any police action that took

5

place after officers had completed the mission of the stop had the impact of unlawfully extending the traffic stop in violation of Mr. Palmer's constitutional rights.

## II.     The Evidence Must Be Suppressed Because Officers Searched Mr. Palmer's Vehicle Without the Requisite Probable Cause.

The interior of a car is subject to Fourth Amendment protection from unreasonable intrusions by the police. *New York v. Class*, 475 U.S. 106, 106 (1986). Officers were therefore required to have cause to search the interior of Mr. Palmer's vehicle. The officers lacked such cause until they discovered the bag of drugs on the side panel of the of the driver's side door —a discovery made only when an officer put his flashlight through the open window of the car. That intrusion—which "broke the plane" of the car—was unlawful.

At issue in this case is whether the police were lawfully in the position in which their observations were made. Only after answering that question can the Court complete the requisite analysis to determine whether the plain view doctrine is applicable to the plastic that was recovered containing suspected drugs.

The Supreme Court has specifically set forth the requirements for application of the plain view doctrine: "[1] if police are lawfully in a position from which they view an object, [2] if its incriminating character is immediately apparent and [3] if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). "It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from

which the evidence could be plainly viewed." *Horton v. California*, 496 U.S. 128, 136-37 (1990). Here, the seizing officer violated the Fourth Amendment to get to the spot where he viewed the drugs by intruding into and trespassing onto private property with his flashlight.

Finally, the government's claim that the alleged drugs were in plain view is belied by discovery and by the evidence that is expected to be presented at a hearing on this motion. Such evidence will demonstrate that it would have been impossible for Officer Kelly to make the observations that he claims to have made from the outside of the car because the objects "incriminating character" was not "immediately apparent". *Dickerson*, at 375. Because its incriminating character was not immediately apparent, officers were not legally justified in seizing it without a warrant. *Id.* As a result, the plain view exception does not apply.

## Conclusion

Wherefore, for the foregoing reasons, and such other reasons as may be presented at a hearing in this matter, Mr. Palmer respectfully submits that the use as evidence of all items obtained from the car at the time he was illegally seized and the car was illegally searched must be suppressed.

Respectfully submitted,

Joseph P. Caleb

_____/s/_____
Joseph P. Caleb

7

8

CalebLaw, PLLC
1100 H Street N.W. Suite 315
Washington, D.C.
20005